GOODWIN *versus* THE GOVERNOR.

A recognizance to appear at a term of the Court, and answer for an alleged offence; must set out specifically the kind of offence charged to have been committed

Where a party has been recognised to appear at a particular term to answer for a breach of the peace, and the State takes no steps towards a forfeiture of the recognizance, (no indictment or presentment being preferred, or continuance had,) such failure operates as a discontinuance, and discharges the accused.

Cargill and Goodwin were recognised by a Justice of the Peace, in a bond, conditioned that Cargill made personal appearance at a term of Bibb Circuit Court, ensuing the date of the bond, and kept the peace towards one Ward, and another. The condition set out no particular offence to have been committed ; and it did not appear from the record that the prosecutor appeared at the return term, or that any measures were then taken in the cause. At a subsequent term, a forfeiture was taken on the recognizance; which Goodwin assigned in this Court, as error.

TAYLOR, J.—There are many assignments of error in this case, several of which it is unnecessary to consider.

The first is, that "it does not appear by the recognizance, that any offence had been committed, which gave the Justice of the Peace authority to bind the original defendant."

The recognizance is taken in the form of a bond, with a condition. The bond is in the usual form, in which Reuben S. Cargill acknowledges himself bound to the Governor for the time being, and his succes-

sors in office, in the sum of two hundred dollars, and the bail acknowledges himself bound in the sum of one hundred dollars. The condition is as follows :

" The condition of this recognizance is such, that if the above bound Reuben S. Cargill, shall personally appear at the next Circuit Court, to be holden in and for the County of Bibb aforesaid, to do and receive what shall then be enjoined him by the said Court, and in the mean time, shall keep the peace towards the state and all its citizens, especially towards James Ward, the prosecutor, and Clement R. Bedford; then the said recognizance to be void, else to remain in full force

(Signed)          R. S. CARGILL, [Seal.]

NOFLIT GOODWIN, [Seal.]

Acknowledged before me, July 7th, 1824,

CORNELIUS COX, *a Justice of the Peace.*"

When a recognizance is taken by a Justice of the Peace, binding an individual to appear at a Court, to answer, &c., the authority of the Justice to take it should plainly appear, by a specification of the charge which is made against the party.    It is not sufficient that he is a sworn officer, and will be presumed to do his duty; he may mistake with regard to that duty, and that it may be known whether he has done so or not, the offence charged against the citizen, should appear in the recognizance.    The inference to be drawn from the phraseology of this recognizance, it is true, is that Ward and Bedford apprehended danger of personal violence from Cargill, and that Ward had made oath before the Justic to that effect; but this is by no means certain ; Cargill may have been charged with an assault and battery upon those per-

sons, and the Justice conceived himself authorised from this circumstance, to bind him to keep the peace until the Court, at which he was expected to answer. But it is essential to authorize a recognizance to keep the peace, that oath should be made by the party in apprehension, that he has good reason to fear personal violence, or secret injury to his property, from the defendant. The fear of injury by the prosecutor, is the very ground-work of such a prosecution, and one can no more be commenced without it, than a warrant can be issued, or recognizance taken, with a view to a charge of larceny, without such charge having been made or stated. In the latter case, it would be necessary for it to appear from the recognizance, that the accused was bound to appear and answer a charge of the state against him of larceny ; so where a man is bound to keep the peace in the mean time, and to appear at the next Court, to be dealt with according to law, it must appear by the recognizance, or by some part of the record, that a prosecutor had made oath that he considered himself in danger of receiving injury from the accused in his person or property. As it is not shown by the record in this case, that any such oath was taken, and as the recognizance does not bind Cargill to appear and answer any particular charge, there is, in this respect, a material defect.

The next assignment is, that "the forfeiture was taken at a time, subsequent to that at which the party was bound to appear."

It appears that the recognizance was entered into in July, 1824, requiring Cargill to appear at the next term of the Circuit Court of Bibb county. The

next term, the law informs us, was held some time in the succeeding autumn. The first step which was taken by the Court in this case, was at the Spring Term, 1825. One Court, then, must have elapsed without any notice having been taken of the cause, and the effect of this would be, a discontinuance. In a case, of the kind which this is presumed to have been, that of a recognizance to keep the peace, if in no other, the failure of the state to proceed at the return term, would amount to a discharge of the accused. Although no statute prescribes the duty of the Court to which such recognizance is returned, yet the law does require that the defendant shall be bound by the recognizance, to appear at the next term of the Circuit Court of the County, &c., and that the recognizance shall be returned to such term. The uniform practice is, if the prosecutor appears, and, on oath, makes a satisfactory showing that his reasonable fears still continue, the defendant is re-bound. But if the prosecutor fail to appear, or appearing, fail to satisfy the Court that there is good reason to continue the defendant under recognizance, he is discharged. In this case, it does not appear that the prosecutor appeared at the first term, or that the defendant was ever called. But at the second term after the date of the recognizance, the security is called upon to bring in the defendant, and failing to do so, a forfeiture is rendered against him. This is clearly error, as there did not then appear to be any proceeding against him. My own opinion is, that had this been a recognizance to answer the state upon some charge exhibited against the defendant, and an indictment

or presentment had been found at the first term, and
the case have been regularly continued, by either the
state or defendant, and a forfeiture taken at a term
subsequent to the one at which the cause had been so
*regularly* continued; the proceedings would have been
regular, although the recognizance did not, in terms,
require the defendant to appear from term to term,
but only at the first term.    The obligation to appear
and answer would continue in all its force, while the
prosecution was regularly going on, and it would be
unnecessary for the recognizance to be renewed to
secure this object.    But it is not important to decide
what would be the effect of such a recognizance in
the case supposed:    To controvert the position, that
the forfeiture was illegally entered at the second term,
there having been no step taken at the first, the case
of *Robinson & Davenport* against *Starr*, decided at
the July term, 1830, of this Court, is referred to.
That was an original attachment: a writ of gar-
nishment was served, on the debtor of the defendant.
The statute requires that a garnishee shall appear
and answer at the first term, or a judgment *nisi*
shall be rendered against him, upon which a *scire
facias* shall issue.    The garnishee did not appear at
the first term, nor was any interlocutory judgment
rendered against him.    This Court decided that such
judgment might be entered at the second term, and
that no discontinuance was produced by its not be-
ing done at the first.    But in that case, the suit
against the original defendant was regularly continu-
ed; the proceeding against the garnishee was a col-
lateral matter, no final judgment could have been
rendered against him until a recovery was had against

the original defendant, and no such final judgment could be had at the first term, because the statute required a continuance of the case, and publication to be made, giving notice to the original defendant of the pendency of the action. The steps taken by the original parties to the suit, operated as a continuance of the proceedings against the garnishee, and no injury could possibly result to him by the postponement of the interlocutory judgment, as the final judgment could not be rendered without calling upon him to appear and defend.

Here the case is entirely different. Cargill was recognized to appear at the first term ; then, if not further prosecuted, the proceeding was at an end ; at any rate, he and his bail had a right so to consider it, and it might never again be in the power of the bail to produce him.

As the case has not been argued, and a decision on these two points is sufficient to make a final disposition of it, it is considered improper to determine upon the power of the Circuit Court to amend the interlocutory judgment, and some other proceedings which are assigned as erroneous.

The judgment is reversed.